# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-11-00585-CR
NO. 03-11-00586-CR
NO. 03-11-00587-CR

**The State of Texas, Appellant**

**v.**

**Andrew Phillip Gonzalez, Appellee**

**FROM THE COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY
NOS. 98408, 98409 & 98410, HONORABLE ROBERT UPDEGROVE, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

The State of Texas appeals from the trial court's grant of Andrew Phillip Gonzalez's motion to suppress evidence obtained pursuant to a warrantless search of his apartment. The State contends that the search was justified under the emergency doctrine. Under the relevant standard of review, we find no abuse of discretion and affirm the trial court's ruling.

## BACKGROUND

San Marcos Police Officer Samuel Myers testified that he responded shortly after midnight on October 22, 2010 to a report that a pickup had struck three parked vehicles in the Grove Apartments lot and left the scene. The pickup was reported as a four-door, full-sized pickup and the driver was reported to be wearing a red soccer jersey. Myers followed a substantial fluid trail believed to be emanating from the pickup. Other officers found the pickup believed to be the

offending truck a mile and a half away in a Texas State University commuter parking lot behind the university's Bobcat Village Apartments. The pickup had substantial damage to the front and front right side (which was "basically gone") back to the engine block, the right fender was up against the right front tire, and the engine seemed to be out of fluid. The pickup was sitting in the middle of the parking lot, not in a space. No driver was apparent, but Texas State University police matched the parking permit on the pickup with a resident of one of the Bobcat Village apartments, appellee Andrew Gonzalez.

Myers and other officers went to Gonzalez's apartment and tried to make contact. They knocked on the door for about ten minutes and got no response. Myers said that, based on the substantial damage to the pickup and the absence of any sound from inside the apartment, he and the officers were afraid that Gonzalez might have been injured—possibly by striking his head—and passed out. He testified that a person hiding usually makes noise moving around and turns lights off. Myers and the officers contacted the resident assistant for the complex, who brought a key within about ten minutes. The officers entered the apartment, found Gonzalez in his bedroom, and asked "if he knew why we were there." Gonzalez responded that it was about his vehicle.

Myers did not recall seeing any blood in the vehicle, on the ground, or at the apartment, but noted that internal injuries—particularly head injuries—do not necessarily produce external bleeding. He did not see broken or cracked glass, but noted that the driver's head might have hit the frame or the steering wheel. He conceded that the driver might not have been the registered owner of the pickup and that the driver might not have been in his apartment. He also acknowledged that he did not suspect that contraband was being disposed of.

2

San Marcos Police Officer Candace Brinkkoeter testified that she responded to the report of hit-and-run at the Grove. She followed the fluid trail Myers described, but it faded off. Other officers found another trail, though she conceded there was no direct evidence linking the two trails. Another officer heard a revving engine at Bobcat Village, which caused other officers to respond to Bobcat Village where they found Gonzalez's pickup. After looking at the pickup, she was surprised it drove away. She took photos of the vehicles at the Grove that were damaged.

Based on this testimony, the trial court concluded that the State did not present evidence demonstrating that the officers had the right to enter Gonzalez's apartment without a warrant. The court granted the motion to suppress evidence.

## DISCUSSION

The State urges that the trial court erred by granting the motion to suppress. We review the decision of the lower court for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). We view the record in the light most favorable to the trial court's conclusion and reverse the judgment only if it is outside the zone of reasonable disagreement. *Id.* We will sustain the lower court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.* We give almost total deference to a trial court's express or implied determination of historical facts and review de novo the court's application of the law of search and seizure to those facts. *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).

The State contends that the officer's entry into the apartment and subsequent search and seizure of evidence were justified by the emergency doctrine. Under the Fourth Amendment to the United States Constitution, warrantless searches of homes are presumptively unreasonable.

3

U.S. Const. amend. IV; *Brigham City v. Stuart*, 547 U.S. 398, 403 (2006). The constitution, however, does not bar police from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid to preserve life and prevent serious bodily injury. *Mincey v. Arizona*, 437 U.S. 385, 392 (1978). The emergency doctrine is similar to the community caretaking function. *Laney v. State*, 117 S.W.3d 854, 858-59 (Tex. Crim. App. 2003). The State must show that the facts and circumstances surrounding the entry and search were such that the officers reasonably believed that an emergency existed which made obtaining a search warrant impracticable. *Bray v. State*, 597 S.W.2d 763, 764-65 (Tex. Crim. App. 1980). Although courts previously held that the police officer must be primarily motivated by the perceived emergency rather than the desire to investigate, *see Wiede v. State*, 157 S.W.3d 87, 102 (Tex. App.—Austin 2005, pet. ref'd), the United States Supreme Court has made clear that, in the context of the emergency doctrine, the officer's subjective motivation is irrelevant in determining whether the officer's actions violated the Fourth Amendment. *Brigham City*, 547 U.S. at 404 (cited in *Pitonyak v. State*, 253 S.W.3d 834, 850 (Tex. App.—Austin 2008, pet. ref'd)). An officer's action is reasonable under the Fourth Amendment if the circumstances known to the officer justified an objectively reasonable belief that his conduct in entering the residence was necessary to protect or preserve life or avoid serious bodily injury. *See id.* at 404-05; *see also Laney v. State*, 117 S.W.3d 854, 862 (Tex. Crim. App. 2003).

After the hearing, the trial court made findings of fact and conclusions of law that are not directly challenged on appeal. The court found that, when the police officers entered the apartment, there was no proof that Gonzalez's pickup was involved in the Grove parking lot accidents or that Gonzalez was driving or riding in the pickup. The court found that there was

no obvious sign of injury to anyone, much less Gonzalez, and that there was no evidence that the officers conducted themselves consistent with the expressed concern for Gonzalez's well-being—e.g., they did not call an ambulance before entering the apartment or inquire about his well-being immediately after they entered the apartment.

Giving the relevant fact findings almost total deference as we must, *see Dixon*, 206 S.W.3d at 590, we cannot say that the trial court's findings are erroneous. Although the officers at the scene may have feared for Gonzalez's well-being, the evidence adduced at the hearing was not so overwhelming that it renders erroneous the trial court's contrary findings. Based on those findings, we cannot say that the trial court abused its discretion by granting Gonzalez's motion to suppress.

## CONCLUSION

We affirm the order granting the motion to suppress evidence gained consequent to the police officers' warrantless entry into Gonzalez's apartment.

_____

Jeff Rose, Justice

Before Chief Justice Jones, Justices Rose and Goodwin

Affirmed

Filed:   August 30, 2012

Do Not Publish